ELIZABETH L. GARDNER v. FIDELITY MUTUAL LIFE ASSOCIATION.

FENTON G. WARNER v. SAME.[1]

January 18, 1897.

Nos. 10,181, 10,182—(149, 150).

**Mutual Benefit Insurance—Cancellation of Policy—Powers of Agent.**
Rulings of the court below on the trial together of these actions, upon objections made to certain offers to introduce testimony of the same general character, considered and disposed of. *Held*, that the rulings were correct.

Appeals by plaintiff in each case from an order of the district court for Ramsey county, Charles D. Kerr, J., denying a motion for a new trial. Affirmed.

*James E. Trask* and *H. J. Horn*, for appellants.
*Warner, Richardson & Lawrence*, for respondent.

COLLINS, J. These actions were by consent tried before a jury together, but as separate cases, and at the conclusion of the evidence the court directed, and the jury returned, a verdict in each case for defendant. On appeal from orders denying motions for new trials, they were argued and submitted together.

[1] Reported in 69 N. W. 895.

The defendant is a mutual benefit association, organized under the laws of the state of Pennsylvania, on the mutual assessment plan. The action in which Mrs. Gardner is plaintiff is upon a certificate of date December 8, 1893, whereby the life of Clarence B. Gardner—who was plaintiff's unmarried son—was insured for the sum of $2,500, and in which plaintiff was designated as beneficiary. The other action, Warner being plaintiff, is upon a certificate of date January 11, 1894, insuring the lives of the plaintiff, Warner, and said Clarence B. Gardner for the sum of $5,000, payable to the survivor upon the death of either. At the time of the issuance of this certificate, Warner and Gardner were co-partners in business, and so remained until some time in June, 1894. Gardner died in September of the same year, and proofs thereof were duly made and filed with the association. It refused to pay, and these actions were brought.

The complaint in the Gardner case was in the usual form, but in the Warner case it was averred, in addition to the usual allegations, that on August 16, 1894, the defendant association obtained from Warner and Gardner an assignment of the joint certificate by means of false and fraudulent representations and undue influence.

Stated as concisely as possible, the defense interposed by the answers was that on August 10, 1894, the beneficiary named in the certificate for $2,500 had been duly changed by a surrender of the certificate itself, on request made by the insured, and the issuing of a new certificate to him, in which Warner was named as beneficiary, and that immediately afterwards, for a valuable and adequate consideration, and at the express solicitation and request of the insured, Gardner, and the beneficiary, Warner, said new certificate was duly surrendered to the association and canceled. It was also alleged that, at the same time and under the same circumstances, the joint certificate for $5,000 was duly surrendered to and canceled by the association. There was another allegation to the effect that all payments made to defendant on account of these certificates were made by the insured, and by no other person. In the Warner case the answer denied that false or fraudulent representations had been made, or undue influence used, to procure possession of the $5,000 certificate.

The reply in each case denied that either certificate had been sur-

rendered to or canceled by the association.  It was alleged, in the Gardner case, that through false and fraudulent representations and undue influence the association had induced the insured to apply for a change of beneficiaries and the substitution of Warner for his mother, and that such change was made on account thereof;  and it was also alleged that subsequently, and by means of false and fraudulent representations and undue influence, Warner, the substituted beneficiary, and Gardner, the insured, were induced to make, and that defendant procured, an assignment to it of the new certificate for $2,500 without consideration.

On the issues thus made the trial was had, and from the evidence it conclusively appeared that, at the express request of the insured, the $2,500 certificate had been received by the association, and, in form, a new one had been substituted, and delivered to him, in which Warner had been designated as the beneficiary.  It also conclusively appeared that, soon afterwards, Warner and Gardner went before a notary public, made oath to certain affidavits, signed and acknowledged an assignment to the association of each certificate, and handed them to one Pleins, to be delivered to the assignee.  Soon afterwards Pleins appeared at the office of Gardner and Warner with a draft upon the association for $1,500, made by its authorized agent, and payable to the order of Gardner.  The latter indorsed the draft, and requested Pleins to obtain the money thereon.  Pleins went to a bank, deposited the draft to his own credit, paid $50 upon Gardner's note then held by the bank, and took a certified check for $1,100, payable to the order of Gardner and Warner.  He returned to the office, gave this check to Gardner, and told him of the $50 payment.  It was agreed that Pleins was to retain the balance, $350, for his own services in obtaining the money from the association.  Both certificates in which Warner was beneficiary were then in the safe in the office.  Warner took them out, and handed them to Pleins, to be delivered to defendant association. From Warner's evidence at the trial it is beyond question that he was an active participant in the whole transaction.  It was not shown what had become of the certified check, but the money to cash the same had been set apart out of Pleins' funds by the bank officials, and had not been called for when the cases were tried.

The testimony was undisputed that, at the request of both Gard-

ner and Warner, Pleins went to Pennsylvania as their accredited agent, and for the purpose of inducing the association to make a cash settlement upon the certificates, in view of the alleged fact that Gardner's health had failed, that he was without means, and that his purpose was, if the settlement could be made, to go South, in the expectation that he might recover; that the officers of the association at first declined to act upon the proposition, but finally, and with reluctance, and not until they had made a thorough examination as to the alleged failure in health, and the good faith of both insured and beneficiary, they consented to take the assignments and pay over the money. Even then they required the representations of Gardner and Warner to be made under oath, and they were contained in the affidavits we have referred to. It was also beyond dispute that, at the time of the transaction, and for some months previous, Pleins was and had been in the employ of the association as a soliciting agent.

The "settled case" on which the motions for new trials were founded, and which has been brought before us on this appeal, does not purport to contain all of the evidence received at the trial below, and therefore we are compelled to treat it as a bill of exceptions only. The final ruling, when the court ordered that a verdict for defendant be rendered in each case, cannot be considered; our investigation. being confined to an examination of the rulings on the admissibility of testimony alleged to have been erroneously excluded. Board of Trustees v. Brown, 66 Minn. 179, 68 N. W. 837.

On the trial appellants' counsel repeatedly attempted to show that, from the beginning of the negotiations which led to the payment of the money and the assignment and surrender of the certificates, Pleins made false and fraudulent statements and representations to Gardner, the insured, and to Warner, the beneficiary, concerning all three of the certificates, and their value in case of the decease of the insured, and also as to the defendant association; that both of these persons relied upon these statements and misrepresentations, and believed them to be true; and that by reason thereof Gardner was induced to surrender the first certificate for $2,500, and to take out in lieu thereof the certificate for the same amount in which Warner was designated as the beneficiary; and, further, that by reason of these same false statements and repre-

sentations, and in the belief that they were true, both Gardner and Warner were induced to surrender up and to assign to the association the certificate last mentioned and the joint certificate for $5,-000. And, as those questions were asked and offers made, the court sustained each objection thereto, apparently for the reason that there was no evidence in the case tending to show that Pleins was anything more than a soliciting agent for the association, or that he possessed any authority or power outside of this.

If, upon the evidence as it stood, Pleins' authority to act for defendant was limited and restricted to merely soliciting and procuring memberships, it is obvious that his statements, not within the scope of his agency, would not bind his principal, in the absence of proof that he had been held out as authorized to make them, or subsequently and with knowledge of the facts the association had ratified what he said and did. We have no doubt but that, prior to the moment that the contract of agency between Pleins and defendant (the latter's Exhibit 1) was put in evidence, and this was before plaintiffs rested, the rulings were correct. But in that contract was a clause which, in connection with other testimony, had it been offered, might have changed the situation, and have rendered the subsequent rulings erroneous.

This contract in terms constituted Pleins an agent for the purpose of procuring applications for insurance on the lives of individuals, and forwarding them to defendant association for approval or disapproval, and, if approved, and certificates were issued, for collecting the amount due upon receipts for dues or premiums accompanying the certificates. It was expressly provided that Pleins should not be an agent for any other purpose, but, in specifying the manner in which he should perform his duties as solicitor and collector, it was provided that he should perform such other necessary duties as might be required, in connection with the general business of defendant association, without other compensation than the previously stipulated commissions as a soliciting agent and collector. So that, by the terms of the contract, Pleins might be required to exercise agency powers and duties of a special or general character, independent of those of a solicitor or collector; or, to put it in another form, he might have been engaged, authorized, and empowered by the association to open, conduct, and complete the nego-

tiations with Gardner and Warner in which the false and fraudulent statements and representations are alleged to have been made, and in such event the liability of the association for Pleins' fraud could not well be questioned. But it was optional with it so to require, and the burden of proof was on the plaintiffs to show that it had exercised this option, and had required Pleins to open or conduct these negotiations, or that Pleins had been held out as an agent authorized to act in this behalf. It could not be inferred from the fact that these acts might be required of him. As a soliciting agent and collector of dues or premiums to be paid upon certificates when delivered, he could not bind the company by the statements plaintiffs attempted to prove; but, if the association actually required the performance of other general duties, as it had the right to do, or if he was held out as having been so required, a different case would be presented.

So the question is, was any attempt made by plaintiffs' counsel to show either that Pleins had been required or employed to procure the surrender or assignment of the certificates, or to treat with Gardner or Warner, or had the latter been led by the association to suppose that he had? It was not claimed upon the trial that either had any knowledge of the existence of the clause we have spoken of in the special agency contract, or that the association knew, or should have known, that Pleins, acting outside of his powers as a special agent, had assumed to speak for it generally, or had made false or fraudulent representations with a view of securing the certificates, or that the insured had been induced by him to solicit a money payment on the same in consideration of cancellations. The bill of exceptions shows that the offers of evidence were confined exclusively to statements made by Pleins before he went to the principal office of the association in Pennsylvania, armed with written authority from Gardner and Warner to accept a part of the insurance at once, for which they proposed to cancel the certificates; the reason given for this proposal being that Gardner wished to use the money in an effort to regain his health, and that Warner was willing and anxious for him to do so.

No attempt was made to show, nor has it been claimed, that, up to this time, the association had any knowledge of Gardner's ill health, or that he or his beneficiary had any cause for seeking to

obtain an immediate cash payment, or had thought of so doing. Nor, when the rulings were made, had there been any offer to prove that the association had required or authorized Pleins to act for it in this or any other transaction, except as a solicitor of insurance and a collector of dues and premiums. The offers which the court ruled upon were not broad enough to have been of any value. They should have included an offer to show that the association had exercised the option right provided for in the contract, or that Pleins had otherwise been authorized to represent it in this matter, or that, without actual authority, he had been held out as empowered to act in its behalf, or that, with knowledge of what had been done, it ratified his acts. The court ruled correctly upon the offers as made.

The motion for a new trial in each of these cases was also upon the ground of newly-discovered evidence. This feature of the appeal we cannot consider. It has not been made to appear by a proper certificate that the "case" contains all that was presented to and considered by the court below upon this branch of the motion. The rule upon this subject, laid down in Hospes v. Northwestern M. & C. Co., 41 Minn. 256, 43 N. W. 180, and several other later cases, is directly in point here.

The orders appealed from are affirmed.